# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 4, 2008 Session

## STATE OF TENNESSEE v. PHEDREK T. DAVIS

**Appeal by permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2003-D-2992    Seth Norman, Judge**

---

**No. M2006-00198-SC-R11-CD - Filed October 17, 2008**

---

GARY R. WADE, J., concurring.

The specific question presented for our review is whether the acquittal-first jury instruction, in the context of the right to a complete charge on the count in the indictment as well as any and all lesser-included offenses supported by the evidence at trial, either is violative of our constitution or should be overruled for policy reasons. See State v. Ely, 48 S.W.3d 710 (Tenn. 2001); State v. Burns, 6 S.W.3d 453 (Tenn. 1999). The majority concludes that the instruction meets constitutional muster, and I am inclined to concur with that assessment; however, an acquittal-first instruction in Tennessee largely qualifies as legal fiction because the trial judge is required under our constitution to instruct on the primary charge and the full panoply of lesser-included offenses in advance of deliberations. That is, the jury, by being provided with the entirety of the instructions as appropriate, necessarily considers any lesser-included offenses before convening for deliberations. It is my belief, therefore, that as a matter of practicality and for sound policy reasons, Tennessee should retreat from acquittal-first and formally adopt an alternative instruction – one which fits within the framework of a criminal jury trial and which best conforms to specific provisions within our state constitution.

Not surprisingly, our federal and state courts are not unanimous as to how juries should consider the primary charge in the indictment and the lesser-included offenses. This Court's majority identifies the acquittal-first approach as the rule of this state, whereby the jury is instructed not to consider a lesser offense until it unambiguously acquits on the greater offense. See, e.g., People v. Boettcher, 505 N.E.2d 594, 598 (N.Y. 1987). A second approach permits the jury to consider the primary charge and the lesser offenses simultaneously but requires that verdicts be reached in a preordained order. See, e.g., Dresnek v. State, 697 P.2d 1059, 1063-64 (Alaska Ct. App. 1985), aff'd per curiam, 718 P.2d 156 (Alaska 1986), cert. denied sub nom. Spierings v. Alaska, 479 U.S. 1021 (1986). A third approach permits a defendant to make an election between two options as to the nature of the deliberations – either (1) the acquittal-first approach or (2) an approach

permitting consideration of the greater charge and its lesser included offenses at the same time. See, e.g., U.S. v. Tsanas, 572 F.2d 340, 346 (2d Cir. 1978). It is my opinion, however, that the method that best fits within our system, best accounts for the nature of juries, and most likely ensures the economy, consistency, reliability, and thoroughness of the judicial process, is the "reasonable efforts" approach – the most popular alternative among courts that have addressed the issue and, in my view, the most logical. See, e.g., State v. LeBlanc, 924 P.2d 441, 442 (Ariz. 1996). For a variety of reasons, therefore, I would encourage the rejection of the acquittal-first approach and urge this Court today or at some time in the future to adopt the reasonable efforts instruction – not only the prevailing rule among the courts that have addressed the issue – but the rule that strikes perfect harmony with Article I, section 6 of the Tennessee Constitution.

The Arizona Supreme Court described the reasonable efforts approach as follows:

Under this method, jurors may render a verdict on a lesser-included offense if, after full and careful consideration of the evidence, they are [first] unable to reach agreement with respect to the charged crime. Thus, the jury may deliberate on a lesser offense if it either (1) finds the defendant not guilty on the greater charge, or (2) after reasonable efforts cannot agree whether to acquit or convict on that charge.

State v. LeBlanc, 924 P.2d at 442. The Arizona high court observed that this method protects "the state's interest in a full and fair adjudication of the charged offense" by assuring that greater charges are considered first. Id. at 443. There are other advantages. The instruction also permits a jury the flexibility to avoid gridlock (and a resultant mistrial), to move deliberations forward when there is no unanimity, and to revisit the greater offense if developments so require. Finally, the reasonable efforts approach, at least in my opinion, best reflects the manner in which Tennessee juries actually perform their duties given the order and content of their instructions.

The excellent research performed by the majority confirms that the "reasonable efforts" approach represents the mainstream of the various alternatives. There is good reason for that. Typically, state courts, while respectful of the prosecution's entitlement to full consideration on the primary charge, are equally sensitive to the singular role played by juries in our criminal justice system; there exists a general reluctance to divest that body of its autonomy.[1] In my assessment, the reasonable efforts approach strikes the appropriate balance between the interests of the state as the prosecutorial entity and the ultimate responsibility of the jury to reach a rational verdict.

The Oregon Supreme Court has also spoken on the subject:

[B]ecause of the complexity of submitting multiple criminal charges to a jury, generally jurors are better served if the trial judge gives them some format to follow, rather than instructing them on all the possible verdicts and leaving them to

---

[1] "The jury is, above all, a political institution and it must be regarded in this light in order to be duly appreciated." Alexis de Tocqueville, 1 Democracy in America 282 (Alfred A. Knopf 1945) (1835).

2

deliberate as they see fit. The [reasonable efforts approach] sets forth a <u>more ordered procedure without creating any coercion</u>.

<u>State v. Allen</u>, 717 P.2d 1178, 1181 (Or. 1986) (emphasis added).[2]  Unlike the other, less-popular alternatives employed throughout the United States, the reasonable efforts method assures that every question of law and fact will benefit from thoroughness and structure, on the one hand, and jury independence, on the other.  See <u>State v. Reyes</u>, 706 P.2d 1326, 1330 n.5 (Haw. Ct. App. 1985) ("the jury must always consider the charged offense" before considering lesser-included offenses). Having said that, the elimination of the possibility of coercion may qualify as the best feature of the instruction.  It is my belief that each and every juror should be encouraged to consider alternatives, weigh all potential outcomes, and re-think their initial determinations based upon discussions with their peers.  Such freedom to deliberate fluidly will result in carefully-considered verdicts, rather than those based upon a forced commitment absent any knowledge of the alternatives.

The sanctity of a jury's deliberations is as crucial to the criminal process as the content of its verdict.  The instructions by Tennessee courts should reflect that precept.  The Washington Supreme Court, while applying the reasonable efforts rule, made the following comment:

> The mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, or the jurors' intentions and beliefs, are all factors inhering in the jury's processes in arriving at its verdict, and, therefore, inhere in the verdict itself.

<u>State v. Linton</u>, 132 P.3d 127, 133 (Wash. 2006) (quotation omitted).  The adoption of the reasonable efforts method should reduce "the risk of compromise verdicts by enabling the finders of fact to better gauge the fit between the evidence adduced at trial and the offenses being considered" and minimize the prospect of "hung juries and the significant costs involved with retrial." <u>Green v. State</u>, 80 P.3d 93, 96 (Nev. 2003).  Many states have opted for the reasonable efforts instruction on that basis: "Retrials, necessitated by hung juries, are burdensome to defendants, victims, witnesses and the court system itself."  <u>State v. Labanowski</u>, 816 P.2d 26, 34 (Wash. 1991).  Even our own courts have recognized that discouraging retrials helps avoid "the monetary costs, as well as the emotional and physical costs of again going to trial."  <u>State v. Spears</u>, 780 S.W.2d 776, 777-78 (Tenn. Crim. App. 1989).

It is my opinion that juries, knowing of lesser charges, as is required under our state constitution, will unavoidably be influenced by that knowledge.  The majority concedes this point by acknowledging that a jury considering a greater charge "simultaneously considers, albeit not

---

[2] The Oregon Supreme Court's adoption of the reasonable efforts approach has been superseded by statute. No such determinative statute exists in Tennessee.

explicitly, all applicable lesser-included offenses supported by the proof."[3]  It is preferable, then, to address this reality in a straightforward way that allows the jury, after thoroughly considering a greater charge, to consider the alternatives supported by the evidence.  At the same time, the jury reserves the right to revisit the primary charge in the indictment as needed, or eventually, if necessary, retains the ability to consider all of the various options at once.[4]

In response to the policy reasons for favoring the adoption of the reasonable efforts approach, the majority enumerates five policy arguments for permitting acquittal-first instructions.  First, the majority suggests that verdicts rendered pursuant to acquittal-first instruction will satisfy our constitution's unanimity requirement.  See Tenn. Const. art. 1, § 6; State v. Scarbrough, 181 S.W.3d 650, 658 (Tenn. 2005).  The statement is both true and irrelevant.  Verdicts satisfy the unanimity requirement by being unanimous, not by conforming to specific rules governing the structure of deliberation.  See also Cantrell v. State, 469 S.E.2d 660, 662 (Ga. 1996) (unanimity is not required as to greater-included offenses if verdict is unanimous on lesser-included offense); State v. Sanders, 344 S.E.2d 592, 594 (N.C. Ct. App. 1986), disc. review denied, 349 S.E.2d 604 (N.C. 1986) (unanimous verdicts on lesser charges meet unanimity requirement even if no unanimity is reached on greater charges).  If uncertainty as to unanimity arises at trial, either party may ask that the jury be polled.  This procedure – not an acquittal-first instruction – insures unanimity.  Moreover, there is no solid ground for believing that an acquittal-first instruction encourages a unanimous verdict.  The majority cites only the conjecture of another court that has also decided to hew to the minority view.  Far more jurisdictions have reached the opposite conclusion, having determined that the "reasonable efforts" procedure is more effective at reducing the risk of coerced verdicts or false unanimity.  See LeBlanc, 924 P.2d at 442 (citing State v. Fletcher, 717 P.2d 866, 872 (1986) (Feldman, J., concurring); U.S. v. Jackson, 726 F.2d 1466, 1469 (9th Cir. 1984)).

Second, the majority indicates a desire to add "structure" to jury deliberations and to protect the jurors from the "confusing, tedious, and perhaps initially overwhelming" aspects of their duties.  It is indeed possible that some jurors might be aided by the structure provided by acquittal-first instructions, but that is equally true of the reasonable efforts rule.  Other jurors, however, might be daunted by an ironclad, formalistic restriction on the nature of their deliberations, or might be hampered by an inability to examine a lesser offense in the context of the primary charge.  It is above

---

[3] In a footnote, the majority suggests that this is true "at least with respect to those lesser-included offenses whose statutory elements are included within the statutory offense charged."  I agree that we cannot assume that juries limit their simultaneous consideration of lesser-included offenses to only lesser-included offenses in that category.

[4] For an adept fictionalized portrayal of jury deliberations in a murder trial, see Reginald Rose's play 12 Angry Men.  In a particularly memorable scene, one of the jurors says:

It's very hard to keep personal prejudice out of a thing like this.  And no matter where you run into it, prejudice obscures the truth. . . .  Nine of us now seem to feel that the defendant is innocent, but we're just gambling on probabilities.  We may be wrong.  We may be trying to return a guilty man to the community.  No one can really know.  But we have a reasonable doubt, and this is a safeguard which has enormous value to our system.  No jury can declare a man guilty unless it's sure.  We nine can't understand how you three are still so sure.  Maybe you can tell us.

4

my abilities and, I think, those of the majority to suggest how many jurors will be of the former type and how many the latter. For this very reason, we should avoid any unnecessary intrusion as to the nature of jury deliberations. While the judge's instructions as to duty and boundaries are indispensable to our criminal justice system, the jury should always be at liberty to exercise its ultimate responsibilities as prescribed by our constitution.

Third, the majority states that acquittal-first instructions encourage thorough deliberation because they would make the jury "more likely to focus with the depth of concentration appropriate to the gravity of its task." Much like my colleagues, I can only speculate. Nevertheless, I must disagree with their conclusions. If anything, acquittal-first instructions artificially withdraw relevant considerations from the jury's purview and replace fluid deliberation with a process-oriented focus on forcing a verdict without discussion of the lawful alternatives. While the proverbial "blue plate special" may be the best choice at the local eatery, the better policy is to review the entire menu before placing the order.

Fourth, the majority argues that an acquittal-first jury instruction is necessary to prevent compromise verdicts. I disagree. Juries are presumed by law to follow all of the instructions, State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004), and the acquittal-first charge is merely a component of a larger text which provides admonitions, implicitly or explicitly, against any compromise decision.

Finally, the majority suggests that we should continue to permit acquittal-first instructions because of their longstanding use in this state. Indeed, in State v. Mann, 959 S.W.2d 503, 521 (Tenn. 1997), this Court affirmed, in a cursory manner, the acquittal-first instructions similar to those included in our pattern jury instructions:

> If you have a reasonable doubt as to the defendant's guilt of [insert offense charged], as charged in [count of] the indictment, then your verdict must be not guilty as to this offense, and then you shall proceed to determine whether the defendant is guilty or not guilty of [insert offense charged], as charged in [count of] the indictment.

T.P.I.—Crim. 41.02, Multiple counts: Guilt finding limited to one—Order of consideration (8th ed. 2004). While I concede that courts must proceed cautiously before upsetting entrenched practices, there is no justification for the perpetuation of an unworkable standard. Moreover, in recent years, development of the law pertaining to lesser-included offenses has become essential to our applications of the Criminal Sentencing Reform Act of 1989. See Burns, 6 S.W.3d at 465-69 (adopting Model Penal Code definition of "lesser-included offense" and requiring jury instructions on lesser-included offenses for which evidence in the record supports a charge); State v. Trusty, 919 S.W.2d 305 (1996) (distinguishing between "lesser included offenses," which include only elements of the greater offense and for which instructions must be given, and "lesser grades" of the greater offense, for which instructions should only be given if supported by evidence), overruled by State v. Dominy, 6 S.W.3d 472, 477 (Tenn. 1999) (eliminating distinction between "lesser grade or class" and "lesser-included offense"); Ely, 48 S.W.3d at 718-27 (discussing ongoing development of law

regarding lesser-included offenses). If the acquittal-first instruction was at one time the best among the various alternatives available for this state, that is no longer so. The right to appropriate jury consideration of lesser-included offenses is "of constitutional dimension" under our constitution, Ely, 48 S.W.3d at 727, and our constitution guarantees that "the right of trial by jury shall remain inviolate." Tenn. Const. art. I, § 6. As Ely confirmed, the contents of that right have not been frozen to include only the considerations recognized nearly seventy years ago in Willard v. State, 130 S.W.2d 99, 100 (Tenn. 1939), but rather have been applied to the body of law more recently developed by our General Assembly. In short, the time has come for Tennessee to join the legion of states which have seen the wisdom of the reasonable efforts approach.

While my advocacy for a change in the nature of the instruction is based on policy grounds, there are state constitutional considerations which support the reasonable efforts approach. The right to trial by jury in this state has its origin in the common law and in the Constitution of North Carolina. Patten v. State, 426 S.W.2d 503 (Tenn. 1968); Garner v. State, 13 Tenn. (5 Yer.) 159 (1833). It is undisputed that this constitutional provision includes the entitlement to have all factual issues resolved during a trial in both civil and criminal cases. Hurt v. Earnhart, 539 S.W.2d 133 (Tenn. Ct. App. 1976). Our guarantee is that the issues of fact will be determined by twelve jurors properly instructed by the trial court. State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000); see also Grooms v. State, 426 S.W.2d 176 (Tenn. 1968).[5] So, even if the guarantee of trial by jury in Article I, section 6 does not mandate an outright rejection of the acquittal-first instruction on constitutional grounds, the reasonable efforts approach, in my judgment, is more closely aligned with the corresponding provision of Article I, section 19 that "the jury shall have the right to determine the law and the facts, under the direction of the court . . . in . . . criminal cases";[6] I would add that the current editions of the Tennessee Pattern Jury Instructions acknowledge the continued vitality of this particular section:

> You [the jury] are the exclusive judges of the facts in this case. Also, you are the exclusive judges of the law under the direction of the court. You should apply the law to the facts in deciding this case. You should consider all of the evidence in light of your own observations and experience in life.

---

[5] "For a right to remain inviolate, it must not diminish over time and must be protected from all assaults to essential guarantees." 47 Am. Jur. 2d Jury § 6 (1995).

[6] The drafters of the Tennessee Constitution modeled this provision on a similar section of the Pennsylvania Constitution of 1790. Pa. Const. art. I, § 7. Interestingly, the United States Congress also included a similar provision in the much-maligned Sedition Law passed of 1798. During the debate on the Sedition Law in the House of Representatives, Congressman William C. C. Claiborne of Tennessee offered the following amendment: "And in all cases arising under this act, the jury who shall try the cause, shall be judges of the law as well as the fact." After some debate on this proposal, the House agreed to similar language from the Pennsylvania Constitution, which is now also found in the Tennessee Constitution at Article I, section 19. See Mark DeWolfe Howe, Juries as Judges of Criminal Law, 52 Harv. L. Rev. 582, 586-87 (1939). Congressman Claiborne was a former justice on the first Tennessee Supreme Court, and he was appointed to that position by Governor Sevier in the year that the first Tennessee Constitution was enacted, 1796.

T.P.I.–Crim. 1.08 <u>Jury: Judges of facts and law</u> (8th ed. 2004) (emphasis added).  By comparison (and of significance), a judge's power is circumscribed by our state constitution.  Article VI, section 9 specifically directs that "[j]udges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

Since the Nineteenth Century, Tennessee courts have struggled to determine just how Article 1, section 19 defines the balance of responsibilities between judge and jury.  <u>See, e.g.</u>, <u>McGowan v. State</u>, 17 Tenn. (9 Yer.) 184 (1836); <u>Nelson v. State</u>, 32 Tenn. (2 Swan) 482 (1852); <u>Poole v. State</u>, 61 Tenn. 288 (1872); <u>Harris v. State</u>, 75 Tenn. 538 (1881); <u>Hannum v. State</u>, 18 S.W. 269 (Tenn. 1891); <u>Ford v. State</u>, 47 S.W. 703 (Tenn. 1898).[7]  This Court has observed that with regard to questions of law, jurors are "judges of law as well as facts," but this "does not diminish the obligation of the court to explain the law."  <u>McGowan</u>, 17 Tenn. (9 Yer.) at 195.  It has also been said that the jury determines both the law and facts, and the judge is a witness to what the law is. <u>Ford</u>, 47 S.W. at 704; <u>see also</u> <u>Wright v. State</u>, 394 S.W.2d 883, 885-86 (Tenn. 1965).  The powers of a jury are not unfettered; our Court has authorized judicial intervention in the event a jury should make up its own idiosyncratic version the law.  <u>See</u> <u>Ford</u>, 47 S.W. at 705 (stating that jurors "should not set up their own supposed knowledge of the law against that of the court").

Throughout the plethora of commentary on this subject, two driving principles have remained constant about the process of obtaining a verdict in a criminal trial under our constitution:  (1) the judge's role is to instruct the jury on the law; and (2) the jury's role is to decide, within accepted boundaries, which of the relevant laws is applicable, decide the facts, and apply the law to the facts. When an instruction mandates a verdict on the charge in the indictment before consideration of the permissible alternatives, the judge has departed from the role of an instructor of the law.  In sum, the acquittal-first scheme is that least likely to respect the function of the jury in its determination of the applicable law and facts.[8]  In contrast, the reasonable efforts approach does no violence to the role of the trial judge, who must always present the charged offense and those that qualify as lesser and included.  When juries determine which law fits their assessment of the facts, "under the direction of the court," the judge still declares the law.  As indicated, that prerogative does not mean that the jury may "set up their own supposed knowledge of the law against that of the court."  <u>See</u> <u>Ford</u>, 47 S.W. at 705.

**Conclusion**

Sound policy considerations support the adoption of the reasonable efforts instruction to jurors to assist in their deliberation of the primary charge and its lesser-included offenses.  Because

---

[7] As Chief Justice Snodgrass observed over one hundred years ago, there has been "much controversy and some confusion of decision" as to what extent juries were to judge the law.  <u>Ford</u>, 47 S.W. at 705.

[8] In the words of Thomas Jefferson: "Were I called upon to decide whether the people had best be omitted in the Legislative or Judiciary department, I would say it is better to leave them out of the Legislative."  Letter from Thomas Jefferson to the Abbé Arnoux (July 19, 1789), in 15 The Papers of Thomas Jefferson 282, 283 (Julian P. Boyd ed., 1958).

this Court has traditionally adhered to the acquittal-first instruction, I can ascribe no fault to the trial judge in this particular case.  Nevertheless, I would classify the instruction as erroneous, and as far less compatible with the provisions of our state constitution than the reasonable efforts alternative.  Because, however, the record of the trial demonstrates that acquittal instruction had no effect on the verdict in this particular case, the error was harmless.  See State v. Rodriguez, 254 S.W.3d 361, 366 (Tenn. 2008); Tenn. R. App. P. 36(b).  Given the overwhelming evidence against the Defendant, I can concur in the result.  On all other issues, I join with the majority.

_____

GARY R. WADE, JUSTICE