# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3980

LATOSHA ARMSTEAD,

*Petitioner-Appellant,*

v.

MATTHEW J. FRANK, Secretary,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03 C 115—**Lynn Adelman**, *Judge.*

_____

ARGUED MAY 26, 2004—DECIDED SEPTEMBER 8, 2004

_____

Before BAUER, POSNER and COFFEY, *Circuit Judges.*

BAUER, *Circuit Judge.* Petitioner-Appellant Latosha Armstead brought this habeas corpus claim under 28 U.S.C. § 2254 challenging her Wisconsin state conviction for first-degree intentional homicide, party to a crime. The district court denied the petition. Armstead appeals.

## I.  Background

In March 1997, Petitioner-Appellant Latosha Armstead, age thirteen, was living with her grandmother, younger sister,

and eighteen-year-old boyfriend James Williams. Around that time, Armstead and Williams began discussing a plan to steal a car. The car they planned to steal belonged to Charlotte Brown, a home health aid worker who assisted Armstead's grandmother. The final plan called for murdering Brown.

On March 10, 1997, Brown was scheduled to perform home-care for Armstead's grandmother. When Brown arrived, Armstead and Williams asked her for a ride to visit a sick relative. Brown agreed. Armstead got into the front seat and Williams got in back. At some point during the ride, Brown was directed into an alley and told to stop. Armstead dropped her Walkman, as the plan dictated, and when Brown reached over to pick it up, Williams looped a phone cord around Brown's neck. Armstead testified that she attempted to cut the cord from around Brown's neck using a knife. Instead of cutting the cord, she succeeded in cutting Brown's neck. These cuts, however, were not deep and did not directly contribute to Brown's death from strangulation.

With the killing complete, Williams placed Brown's corpse in the back seat and called a friend named Pawpaw (Sparticus Outlaw) for assistance. Armstead and Williams, with the body of Brown, drove to Pawpaw's house. Brown's body was dumped behind an abandoned house where it was found at about six o'clock on the evening of March 10, 1997.

On March 11, 1997, Armstead and Williams returned home with the car. Armstead told her mother, who was visiting at the time, that her father had given her the car. After going for a ride together, Armstead gave the vehicle to her mother. On March 13, 1997, the police stopped Armstead's mother while she was driving Brown's car.

Armstead and Williams were charged for the crime, but they were tried separately. Despite her age, Armstead was charged as an adult. She was convicted by a jury for first-degree intentional homicide, party to a crime, and sen-

tenced to life in prison. She appealed that conviction but it was affirmed by the Wisconsin Court of Appeals.

Armstead filed for a writ of habeas corpus in the district court for the Eastern District of Wisconsin. The petition was denied. We granted a certificate of appealability as to whether the trial court's failure to give a felony murder instruction violated due process; whether the statutes governing juveniles under the jurisdiction of the adult courts violate due process and equal protection; and whether the trial court's refusal to give an abandonment of intent instruction violated due process.

## II. Discussion

### A. Failure to Instruct the Jury on Felony Murder

Armstead claims that her constitutional right to Due Process was violated when the state trial court refused to instruct the jury on the lesser-included-offense of felony murder. The Wisconsin Court of Appeals did not address the question of due process. Instead, it found the error to instruct the jury was harmless error under state law. We review the claim under 28 U.S.C. § 2254(a) and ask whether Petitioner's custody is a violation of the Constitution of the United States. "We review the district court's findings of fact for clear error and its rulings on issues of law de novo." *Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001).

> In general, the failure of a state trial court to instruct the jury on a lesser offense does not implicate a federal constitutional question and will not be considered in a federal habeas corpus proceeding. However, the omission of an instruction regarding a particular offense may effectively result in a directed verdict, thereby implicating Sixth and Fourteenth Amendment rights. In a habeas action, the question is not whether the failure to instruct on a lesser included offense was correct or

> incorrect under state law, but rather whether failure to do so constituted a defect so fundamental that it results in a complete miscarriage of justice or omission inconsistent with the standards of fair procedure. The specific inquiry here is whether the failure to provide [the contested instruction] so infected the entire trial that the resulting conviction violated the appellant's right to due process. Because it is the omission of an instruction that is at issue in this case, the appellant's burden is "especially heavy" because "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."

*Reeves*, 272 F.3d at 920 (internal citations removed).

We are not persuaded that the failure to instruct the jury on felony murder resulted in a miscarriage of justice. Armstead testified that she withdrew from the conspiracy prior to the murder but retained her intent to steal the car. Armstead argues "that Latosha [Armstead] was guilty of felony murder and not first-degree intentional homicide as she abandoned the requisite intent to kill Brown." However, it is clear even from her account that she did not withdraw from the plan prior to Williams looping the cord around Brown's neck. She dropped her Walkman on the floor of the car so that Brown would lean over to pick it up; this was, according to Petitioner's brief, part of the plan. It was not until Williams was in the process of strangling Brown that Armstead says she withdrew. This is not legally sufficient to prevent criminal liability for murder. *Zelenka v. State*, 266 N.W.2d 279, 288 (Wis. 1978). So, with the keystone of Armstead's argument removed, she offers no other reason why the jury would have acquitted her of first-degree intentional homicide but convicted her of felony murder. There was no miscarriage of justice.

### B. Failure to Instruct Jury on Abandonment of Intent

Armstead argues that her right to present a defense was violated when the trial court refused to give one of the two proffered abandonment of intent instructions. As she states in her brief, a defendant is entitled to have the jury consider any defense which is supported by the evidence. *Fletcher v. State*, 228 N.W.2d 708, 711 (Wis. 1975). As we noted above, Armstead's argument that she abandoned her intent immediately prior to the death of Brown does not address the issue. Once the bullet has left the gun, it is too late to withdraw. *See Zelenka*, 266 N.W.2d at 288. Armstead does not address this point in her briefs despite the fact that the Wisconsin Court of Appeals partially based its findings on such a proposition. *State v. Armstead*, 630 N.W.2d 275, ¶ 15 (Wis. Ct. App. 1st Dist. 2001).

### C. Constitutionality of Wis. Stat. §§ 938.183 and 970.032

Throughout her appeals Armstead has argued that these two statutes result in different treatment of children and adults in adult criminal court. The state court on appeal held, "[t]his claim, however, is moot because, . . . the failure to give the felony murder instruction was harmless error. . . . Accordingly, we need not address her claims of equal protection and due process." *Armstead*, 630 N.W.2d 275, at ¶ 12. Armstead again argued equal protection and due process violations in the district court. Respondent consistently answered that the state court's finding was an adequate and independent state ground and therefore, there should be no review of this claim in federal habeas proceedings. Armstead did not respond to this argument until after the district court had entered judgment based on respondent's argument. She admits that this was an error but nonetheless asks that we review the merits of this claim. "To fail to do so would result in a fundamental miscarriage of justice and would significantly prejudice the

defendant," she says. However, there is no further discussion as to what prejudice or what miscarriage of justice she refers to; this is simply a conclusory statement. Without more, this constitutes waiver of the issue. *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995); *accord Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) ("[A]n issue presented for the first time in a motion pursuant to Federal Rule of Civil Procedure 59(e) generally is not timely raised; accordingly, such an issue is not preserved for appellate review unless the district court exercises its discretion to excuse the party's lack of timeliness and consider[s] the issue.") (*citing Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1336 (7th Cir. 1992).

### III.  Conclusion

The district court's decision denying the Petitioner-Appellant habeas corpus relief is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*